IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

2011 JUN 20 PM 1:54

| | | |
|---|---|---|
| OSCAR RUIZ, Reg. No. 96938-180, | § | |
|     Movant, | § | |
| | § | |
| v. | § | EP-10-CV-163-PRM |
| | § | EP-07-CR-1624-PRM-11 |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Movant Oscar Ruiz's ("Ruiz") *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence [ECF No. 1069].[1] In his motion, Ruiz challenges the 135-month sentence imposed by the Court after he pleaded guilty, pursuant to a plea agreement, to money laundering. Ruiz claims that his trial counsel provided constitutionally ineffective assistance. In its response [ECF No. 1072], the United States of America ("the Government") insists that Ruiz's allegations are without merit. In his reply [ECF No. 1073], Ruiz reiterates the arguments in his motion. After reviewing the record and for the reasons discussed below, the Court concludes that Ruiz has failed to establish his entitlement to § 2255 relief. Accordingly, the Court will deny Ruiz's motion and dismiss his civil cause with prejudice. Additionally, the Court will deny Ruiz a certificate of appealability.

## FACTUAL AND PROCEDURAL HISTORY

In May 2006, a source informed Drug Enforcement Administration ("DEA") agents that a transnational criminal organization led by Robert Carlos Villarreal trafficked large quantities of cocaine out of El Paso, Texas, to destinations in Chicago, Illinois, and Atlanta, Georgia. During their subsequent investigation, the agents, through the use of wire intercepts, overheard

---

[1] "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in EP-07-CR-1624-PRM-11.

discussions about a meeting in El Paso to transfer the proceeds from a recent drug sale. The agents traveled to the proposed meeting site where they observed Ruiz drive up in a white Dodge Caravan. The agents watched as Ruiz met with another man, followed him to a nearby apartment, accepted delivery of a duffel bag, returned to the vehicle, and unpacked its contents inside the van. A short time later, local law enforcement officers working with DEA agents stopped Ruiz for a traffic violation. They placed him under arrest when they determined that he had multiple outstanding traffic warrants. A subsequent search of the van revealed $527,529 in cash. A co-defendant claimed that the cash was the remainder of a $600,000 payment for forty kilograms of cocaine delivered in Atlanta. Another co-defendant declared that he had reloaded marijuana delivered by Ruiz on three or four occasions, and that he had driven drug-laden vehicles at the request of Ruiz and his brother on four or five occasions.

After reviewing the evidence, a federal grand jury sitting in the Western District of Texas, El Paso Division, returned a multi-count second superseding indictment charging Ruiz and others with conspiring to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841 (b)(1)(A)(ii) ("count one"), and conspiring to launder money derived from drug trafficking, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (ii), and 1956(h) ("count six").

Ruiz's attorney negotiated a plea agreement with the Government. Under its terms, Ruiz agreed to plead guilty to count six, and the Government promised that it would "move for dismissal of the remaining count(s)" and "not oppose the award of a two-level adjustment for acceptance of responsibility."[2] In the agreement Ruiz also acknowledged that the range of punishment for the money laundering offense included not more than twenty years in prison and

---

[2] Gov't's Resp. to Mot. to Vacate Ex. B at 1-2 (Plea Agreement).

indicated that he understood the Court would consult the United States Sentencing Guidelines before determining his sentence. In the factual basis attached to the agreement, Ruiz admitted that he knew the money came from illicit drug transactions:

> Oscar RUIZ now admits that he knowingly conspired with others to conduct a financial transaction which involved proceeds of a specified unlawful activity. RUIZ admits he attempted to conceal the currency to further the transaction. RUIZ admits that he knew that the transaction involved drug proceeds, and as such RUIZ' actions were done in the furtherance of drug trafficking offenses, to wit: the importation and distribution of controlled substances. RUIZ admits that he intended to deliver the money to other conspirators in Mexico. RUIZ admits that he attempted to launder at least $527,000.00 in drug proceeds.[3]

As a part of the agreement, Ruiz also waived, with limited exceptions, his right to appeal or collaterally attack his sentence. The Court, after advising Ruiz of his rights and reviewing the plea agreement with him, accepted Ruiz's plea, dismissed count one on the Government's motion, and sentenced Ruiz to 135 months' imprisonment followed by three years' non-reporting supervised release, a $5,000 fine, and a $100.00 special assessment.

In his direct appeal, Ruiz claimed that the Court erred when it used relevant conduct from the dismissed count to calculate his base offense level, denied him a minor role downward adjustment, and gave him an upward adjustment for his role in the conspiracy. In its motion to dismiss, the Government argued that Ruiz had knowingly and voluntarily entered into a valid plea agreement and waived his right to appeal his sentence. The Fifth Circuit Court of Appeals accepted the Government's argument, granted the Government's motion, and dismissed the appeal.[4]

---

[3] *Id.* Ex. B at 8.

[4] *United States v. Ruiz*, No. 08-50534 (5th Cir. Feb. 19, 2009).

In his instant motion, Ruiz asserts two grounds for relief. Ruiz first claims that his trial counsel provided ineffective assistance when he failed to object to a sentence based on the dismissed drug count. Ruiz next claims that his trial counsel provided ineffective assistance when he failed to object when the Government's attorney breached the plea agreement by not asking the probation officer to correct the presentence investigation report to reflect that he had pleaded guilty to a money laundering offense and not to a drug offense.

## LEGAL STANDARD

*A.     28 U.S.C. § 2255*

After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted."[5] Accordingly, "'[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'"[6] Typically, before a court will grant relief pursuant to § 2255, the movant must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."[7]

---

[5] *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)).

[6] *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)).

[7] *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

Ultimately, the movant bears the burden of establishing his claims of error by a preponderance of the evidence.[8] A court may deny a § 2255 motion, however, if "the files and records of the case conclusively show that the prisoner is entitled to no relief."[9] When a court finds that the movant is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[10] Thus, the Court has "'broad and flexible power' . . . 'to fashion an appropriate remedy.'"[11]

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal.[12] When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a movant must either (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted.[13] The cause-

---

[8] *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

[9] 28 U.S.C.A. § 2255(b) (West 2011); *see also United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence–and not necessarily direct evidence–that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

[10] 28 U.S.C.A. § 2255(b).

[11] *United States v. Stitt*, 552 F.3d 345, 355 (4th Cir. 2008) (quoting *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997); *see also Andrews v. United States*, 373 U.S. 334, 339 (1963) ("[T]he provisions of the statute make clear that in appropriate cases a § 2255 proceeding can also be utilized to provide a . . . flexible remedy."); *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) ("As an initial matter, we note the broad leeway traditionally afforded district courts in the exercise of their § 2255 authority. . . . This is so because a district court's power under § 2255 'is derived from the equitable nature of habeas corpus relief.'") (quoting *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997)).

[12] *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991).

[13] *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999).

and-actual-prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal."[14] If the movant does not meet either burden, then he is procedurally barred from attacking his conviction or sentence.[15] This procedural bar does not apply, however, to claims which could not have been raised on direct appeal, such as those alleging ineffective assistance of counsel.[16]

B.  *Ineffective Assistance of Counsel*

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions.[17] Moreover, "the right to counsel is the right to the effective assistance of counsel."[18] "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal."[19] To merit relief on an ineffective assistance of counsel claim, a movant must demonstrate both (1) that his "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense."[20] A failure to

---

[14] *Gaudet*, 81 F.3d at 589.

[15] *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992).

[16] *See United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992) (stating that the general rule in the Fifth Circuit is that, except in rare instances where the record on direct appeal is adequate to evaluate such a challenge, an ineffective assistance of counsel claim cannot be resolved on direct appeal because no opportunity existed for the parties to develop the record on the merits of the allegations).

[17] U.S. CONST. amend. VI.

[18] *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

[19] *Gaudet*, 81 F.3d at 589 n.5.

[20] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).

establish either prong of this test requires a finding that counsel's performance was constitutionally effective.[21]

The test's performance prong centers on whether counsel's assistance was reasonable, considering all the circumstances at the time of counsel's conduct.[22] In order to obtain relief, a movant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[23] In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[24] A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the movant must also demonstrate actual prejudice.[25] The test's prejudice prong requires the movant to "show that there is a reasonable probability that, but for counsel's

---

[21] *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

[22] *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

[23] *Id.* at 687.

[24] *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[25] *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[26]

With these principles in mind, the Court turns to the merits of Ruiz's claims.

## ANALYSIS

In his first ground for relief, Ruiz alleges that his trial counsel failed to object to a sentence based upon the dismissed count of conspiring to possess with the intent to distribute cocaine. "Therefore, Petitioner was sentenced to the wrong count . . . when . . . counsel . . . negotiated the plea agreement and should [have] object[ed] to the misrepresentation of the count of conviction."[27]

In the presentence investigation report, the probation officer explained how he calculated the base offense level using the advisory United States Sentencing Guidelines ("sentencing guidelines or U.S.S.G."):

> The U.S. Sentencing Commission guideline for a violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h) is found in U.S.S.G. § 2S1.1(a)(1) and [the sentencing guideline] indicates that the offense level for the underlying offense from which the laundered funds are derived [should be used], if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)[)], and (B) the offense level for that offense can be determined.
>
> In this case, on June 4, 2007, Ruiz-Laura took receipt of $527,529 in U.S. currency from [a co-defendant] which were [sic] the balance of funds derived from the delivery of 40 kilograms of cocaine to Atlanta, Georgia at the end of May 2007. Accordingly, the base offense level for the underlying offense, i.e., Conspiracy to Possess with the Intent to Distribute 5 Kilograms of [sic]

---

[26] *Id.* at 694.

[27] Mot. to Vacate 4.

More of Cocaine, is found in U.S.S.G. § 2D1.1(a)(3) and establishes a base offense level of 34.[28]

The probation officer added two levels because Ruiz was convicted under 18 U.S.C. § 1956 and deducted three levels for acceptance of responsibility, for a total offense level of 33. This resulted in an advisory guideline sentencing range of 135 to 168 months.

Ruiz's counsel submitted written objections to the manner in which the probation officer used sentencing guideline § 2S1.1[29] and sentencing guideline § 1B1.3[30] to determine the base offense level:

> First of all, in his plea to the Court, Defendant <u>never</u> "acknowledged the funds were proceeds from the delivery of 40 kilograms of cocaine to Atlanta, Georgia at the end of 2007." Neither the Factual Basis of the Plea Agreement nor the Court colloquy, at the time of plea, support this assertion.
>
> . . . .
>
> The only conspiracy defendant has ever admitted to being involved in is the conspiracy charge set out in Count 6-Money Laundering, and that he did when [D]efendant told you he agreed with the Factual Basis in the Plea Agreement.
>
> . . . .
>
> The Base Offense Level was erroneously determined, based on the offense level for the underlying offense, i.e., Conspiracy to Possess with the Intent to Distribute 5 kilograms or more of cocaine, U.S.S.G. § 2D1(a)(3), which establishes a base offense level of 34. As previously discussed herein, [D]efendant was not involved in the cocaine conspiracy. Therefore, he did not commit the underlying offense. No one involved in the cocaine conspiracy, including the indicted and unindicted co-conspirators, identified [D]efendant as being involved in the Conspiracy to Possess with Intent to Distribute Cocaine. Furthermore, [D]efendant was interviewed at length . . . to determine his involvement. They were satisfied that Defendant . . . was

---

[28] Gov't's Resp. to Mot. to Vacate Ex. G at 11 (Presentence Investigation Report).

[29] U.S. SENTENCING GUIDELINES MANUAL § 2S1.1 (2007).

[30] *Id.* § 1B1.3.

not involved in the cocaine conspiracy. Therefore, the Government agreed to dismiss the cocaine conspiracy-Count 1.

. . . .

Under these circumstances, defendant reasserts that the Base Offense Level for having conspired with others to conduct and attempt to conduct a financial transaction with proceeds of a specified unlawful activity cannot be determined, pursuant to U.S.S.G. § 1B1.3(a)(1)(A).

Rather, the Base Offense Level for the charged offense in Count 6, Money Laundering, should be calculated, pursuant to U.S.S.G. § 2S1.1(a)(1) and § 2B1.1. According to these two sections the Base Offense level is 28, (22 plus 6–Specific Offense Characteristics).[31]

The probation officer denied the objections and Ruiz's attorney requested an evidentiary hearing. At the evidentiary hearing, Ruiz's counsel reiterated his objections to the presentence investigation report:[32]

Pursuant to a Plea Agreement, Your Honor, the Government agreed to dismiss the more serious offense, which would be Count 1. They allowed the Defendant to plead guilty to Count 6. That is stemming from an arrest that occurred in -- on June 4th, 2007, wherein the Defendant was found in possession of $527,529.

The -- the PSI, Your Honor, that you have before you, we submit, should be based -- calculated based on the offense for which the Defendant pled guilty, which in this case would be the money laundering.

The Probation Department is recommending to the Court that the appropriate base offense level be for the underlying offense, which would have been in the possession of cocaine of 40 kilograms that were delivered in Atlanta, Georgia, sometime in May.

We would submit, Your Honor, it just -- the Government agreed to dismiss the conspiracy to possess and distribute cocaine. There is no logic to the recommendation being advanced by the Probation Department that he should nevertheless be held or sentenced pursuant to that count on which the Government dismissed.

---

[31] Gov't's Resp. to Mot. to Vacate Ex. H-2 at 2-3, 5 (Objections to the Presentence Investigation Report).

[32] *Id.* Ex. I, Vol. II, at 6-11 (Evidentiary Hearing); Vol. III, at 11-12 (Evidentiary Hearing/Sentencing).

> Mr. Ruiz sat with the agent, and I was privy to those conversations.
> In those conversations, Your Honor, Mr. Ruiz disclosed to them that he had
> nothing to do with his brother's conspiracy activities before June 4th, when
> he picked up the money.[33]

At the conclusion of the hearing, the Court noted that "the record is replete with evidence that ties [the money laundering] to unlawful activity involving drug trafficking violations."[34] The Court also determined, based on the preponderance of the evidence, that the findings in the presentence investigation report were correct. The Court then sentenced Ruiz at the bottom of the advisory guidelines range to 135 months' imprisonment. Ruiz's sentence did not exceed the maximum statutory term of twenty years' imprisonment.

In the case of an ineffective assistance of counsel at sentencing claim, a movant establishes prejudice by demonstrating that the deficient performance of his attorney resulted in an increase in his punishment.[35] In other words, a movant must show "that but for his counsel's error, his sentence would have been significantly less harsh."[36]

The record shows that Ruiz's attorney forcefully argued that the Court should not sentence his client based on the underlying offense from which the laundered funds were derived. Moreover, the Court sentenced Ruiz at the bottom of the guidelines range. Ruiz cannot now show that, but for his counsel's purported errors, his sentence would have been significantly less harsh.

---

[33] *Id.* Ex. I, Vol. II, at 6-7.

[34] *Id.* Ex. I, Vol. III, at 19.

[35] *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001).

[36] *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) (per curiam).

Ruiz also maintains that his trial counsel provided ineffective assistance when he failed to object when the Government's attorney allegedly breached the plea agreement by not asking the probation officer to change the presentence investigation report to reflect that he had pleaded guilty to a money laundering offense and not to a drug offense. According to Ruiz, "the breach of the plea agreement caused a sentence which exceed[ed] the Guidelines maximum for the offense of conviction."[37]

A plea may be rendered involuntary due to an unfulfilled promise.[38] "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."[39]

In this instance, however, the Court finds no governmental breach of any promise contained within the plea agreement. The agreement did not require the Government to file objections to the presentence investigation report. It only obligated the Government to "move for dismissal of the remaining count(s)" and "not oppose the award of a two-level adjustment for acceptance of responsibility."[40] The Government met these obligations. Moreover, the plea agreement made it clear "that the Court will consult with and take into account the United States Sentencing Guidelines."[41] As stated previously, a probation officer prepared a presentence investigation report, Ruiz's counsel filed objections, the Court held an evidentiary hearing, and

---

[37] Mot. to Vacate 5.

[38] *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

[39] *Santobello v. New York*, 404 U.S. 257, 262 (1971).

[40] Gov't's Resp. to Mot. to Vacate Ex. B at 1-2.

[41] *Id.* Ex. B at 2.

the Court determined that the calculations in the report—which were made in accordance with the advisory sentencing guidelines—were correct. For these reasons, the Court does not find that any breach occurred or that Ruiz's counsel was ineffective for failing to challenge the alleged breach.[42]

In sum, Ruiz has not shown that his counsel provided constitutionally ineffective assistance. He is not, therefore, entitled to § 2255 relief.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief.[43] The record in this case is adequate to dispose fully and fairly of Ruiz's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."[44] Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[45] In other

---

[42] *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

[43] *Cf. United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the movant's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself).

[44] 28 U.S.C.A. § 2253(c)(1)(B) (West 2011).

[45] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[46] Although Ruiz has not yet filed a notice of appeal, this Court nonetheless must address whether he is entitled to a certificate of appealability.[47]

A certificate of appealability "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."[48] In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[49] To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of

---

[46] *See* 28 U.S.C.A. § 2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *see also Lackey*, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150 F.3d 429, 431 n.1 (5th Cir. 1998) ("We have decided, however, that the monolithic nature of [Federal Rule of Appellate Procedure] Rule 22(b) in conjunction with Congress's mandate for issue specificity on collateral review embodied in 28 U.S.C. § 2253(c)(3) requires a more express request. In order to obtain appellate review of the issues the district court refused to certify, the petitioner must first make the threshold substantial showing of the denial of a constitutional right. *See* 28 U.S.C. 2253(c)(2). Only after clearing this hurdle may the petitioner proceed to brief and we review the merits of the rejected issues.").

[47] *See* 28 U.S.C.A. § 2255 PROC. R. 11(a) (West 2011) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."); *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining that it is appropriate for a district court to address *sua sponte* the issue of whether it should grant or deny a certificate of appealability, even before one is requested).

[48] 28 U.S.C.A. § 2253(c)(2).

[49] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings).

reason would find it debatable whether the district court was correct in its procedural ruling."[50] Here, Ruiz's motion fails because he has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court finds that it should deny Ruiz a certificate of appealability.

## CONCLUSION AND ORDERS

For the reasons stated, the Court concludes that it should deny Ruiz's motion and dismiss his civil cause. The Court further concludes that Ruiz is not entitled to a certificate of appealability. Accordingly, the Court enters the following orders:

1. Movant Oscar Ruiz's *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence [ECF No. 1069] is **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE.**

2. Movant Oscar Ruiz is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

3. All pending motions in this cause, if any, are **DENIED AS MOOT**.

**SO ORDERED.**

SIGNED this 20 day of **June, 2011.**

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[50] *Slack*, 529 U.S. at 484.